Victor Sherman (SBN 38483)
Law Offices of Victor Sherman
11400 West Olympic Blvd. #1500
Los Angeles, CA 90405
(424) 371-5930
Victor@VictorSherman.law
(Attorney for Mr. Kumar)

Devin Burstein (SBN 255389)
Warren & Burstein
501 West Broadway, Suite 240
San Diego, California 92101
(619) 234-4433
db@wabulaw.com

Patrick M. Griffin (SBN 276171)
Griffin Law Office, APC
1350 Columbia St., Suite 401
San Diego, CA 92101
(619) 269-2131
Patrick@GriffinLawOffice.com
(Attorney for Mr. Dmitrienko)

John C. Ellis, Jr. (SBN 228083)
Law Offices of John C. Ellis, Jr.
2495 Truxton Road, Suite 206
San Diego, California 92106
(619) 501-5522
john@johnellislaw.com
(Attorney for Mr. Hosseini)

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SEYYED HOSSEIN HOSSEINI,<br>ALEXANDER DMITRIENKO,<br>EDWIN HARMENDRA KUMAR,<br><br>Defendants. | Case No.: 21-cr-01623-JLS<br><br>Defendants' objection to the government's proposed protective order. |

### A. Introduction.

There was a time, not so long ago, when protective orders were rare, reserved for those few cases where the government had a truly important reason – such as physical safety – to keep specific information hidden from public view. Over the past few years, however, what was once the exception has become commonplace.

Prosecutors now routinely insist on broad protective orders before turning over discovery (as happened here with the protective order already in place). This normalization of governmental secrecy flouts the First Amendment, runs roughshod over the promise of open courts, and is inconsistent with Rule 16's good cause requirement. It should not continue unchecked. "As Justice Brandeis liked to say, sunlight is the best disinfectant." *Lefebure v. D'Aquilla*, 15 F.4th 670, 674 (5th Cir. 2021).

And a little sunlight is exactly what this case needs. Accordingly, the defense respectfully objects to the government's unjustified demand to keep secret the name of the third country. To be clear, the defense has no quarrel with the current protective order, *see* ECF No. 114, which is more than sufficient to protect any legitimate government interests. But for the reasons discussed below, yet another protective order is a bridge too far.

**B.      Discussion.**

First, the government has failed to establish good cause or any compelling reason for the new, more restrictive protective order. Second, the government's efforts to keep the third country a secret from the public are unjustified and futile given the need for a robust defense investigation.

1. <u>The government has not established a compelling reason or good cause for the proposed protective order</u>.

The analysis begins with Federal Rule of Criminal Procedure 16(d)(1), which permits a court to issue a protective order regarding discovery material "for good cause." Good cause, under Rule 16(d), exists "when a party shows that disclosure will result in a clearly defined, specific and serious injury." *United States v. Smith*, 985 F. Supp. 2d 506, 523 (S.D.N.Y. 2013).[1]

By contrast, "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Id*. And when dealing with protective orders covering entire categories of discovery, "courts should take care to ensure that the protection afforded to [the] information is no broader than is necessary to accomplish the [proffered] goals of the protective order." *Id*. at 524.

---

[1] Unless otherwise noted, within quotations, all emphasis is added and all internal citations as well as internal quotation marks are omitted.

3

Moreover, when the protective order at issue extends beyond discovery to restrict the information included in public court filings – as it does here – there are additional constitutional and common law concerns.  These arise from the strong presumption in favor of public access to court records. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978); *Center for Auto Safety v. Chrysler Group*, LLC, 809 F.3d 1092, 1096 (9th Cir. 2016); *see also United States v. Schlette*, 842 F.2d 1574, 1581-82 n.4 (9th Cir. 1988) (explaining that the presumptive right of public access finds its authority in two sources: the common law and the First Amendment.)

Given the longstanding presumption of public access, the Ninth Circuit has held that trial courts ought to seal judicial documents only where "compelling reasons" exist. *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).  "Under this stringent standard, a court may seal records only when it finds 'a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture. The court must then 'conscientiously balance[ ] the competing interest of the public and the party who seeks to keep certain judicial records secret." *Center for Auto Safety*, 809 F.3d at 1096-97.  And it is the party seeking to seal court records that bears the burden of showing compelling reasons exist and to rebut the strong presumption of public access.  *See id.*

This compelling reason standard applies, moreover so long as the records at issue are more than tangentially related to the merits of a case. *Id.* at 1101. Thus, it does not matter if the motion or record to be sealed is dispositive or not: "To only apply the compelling reasons test to the narrow category of 'dispositive motions' goes against the long-held interest in ensuring the public's understanding of the judicial process and of significant public events. Such a reading also contradicts our precedent, which presumes that the compelling reasons standard applies to most judicial records." *Id.* at 1098.

Here, as to the name of the third country and related information, the government has failed to offer any compelling reason or good cause to abrogate the public's right of access to court records. *See id.*; *also United States v. Lindh*, 198 F. Supp. 2d 739, 742 (E.D. Va. 2002) ("the public's right of access to judicial records and documents . . . may be abrogated only in unusual circumstances."). Certainly, it has not demonstrated a genuine need for a broad, restrictive protective order that requires *all* references to the third country be sealed.

To the contrary, given the government's press releases and previous public assertions, the name of the third country should be a matter of public record, not hidden from view. From the outset, the government has been anything but shy about touting the international cooperation essential to

Operation Trojan Shield. *See* Gov. Press Release at ECF No. 161 at 55-64.

According to its lengthy, publicly available press release, "[t]he FBI [] brought together a network of dedicated international law enforcement partners who are steadfast in combating the global threat of organized crime." *Id.* at 59. The press release goes on to list all the law enforcement agencies from the various countries involved, *id.* at 64, and even contains a statement from Europol's Deputy Executive Director Jean-Philippe Lecouffe: "This operation is an exceptional success by the authorities in the United States, Sweden, the Netherlands, Australia, New Zealand and the other European members of the Operational Task Force." *Id.* at 59.

The government's press release further links to the press release from Europol, which expressly names numerous countries involved in the operation, including: "Australia, Austria, Canada, Denmark, Estonia, Finland, Germany, Hungary, Lithuania, New Zealand, the Netherlands, Norway, Sweden, the United Kingdom incl. Scotland, and the United States."[2]

Given these statements to the press, and the fact that the government has publicly acknowledged that the third country is part of the European

---

[2] Europol Press release available at: https://www.europol.europa.eu/media-press/newsroom/news/800-criminals-arrested-in-biggest-ever-law-enforcement-operation-against-encrypted-communication

6

Union, there is no valid basis to further conceal its identity. Considering it was the government that first publicized this information, it should not now be heard to complain about naming the third country with whom it partnered.

This is especially true because the government insists the third country acted lawfully in all respects. *See, e.g.*, ECF No. 161 at 31 ("The third country agreed to obtain a court order in accordance with its own legal framework to copy an iBot server located there and provide a copy to the FBI pursuant to a Mutual Legal Assistance Treaty"). Thus, identifying it could not be harmful to government interests. In fact, based on everything the government told the press, it would seem the third country should be publicly lauded for its key role in what was supposedly a lawful and successful operation. Moreover, the third country is no longer providing any data relevant to this prosecution because the Anom network has been dismantled, which means any prior need for secrecy no longer exists.

As such, the government has not demonstrated that disclosing the name of the third country "will result in a clearly defined, specific and serious injury." *Smith*, 985 F. Supp. 2d at 523. The Court, therefore, should sustain this limited objection to the proposed protective order.

2. <u>The government's attempt to hide the third country is futile.</u>

This is equally true because the government's attempt to hide the third

country's identity is futile. As this Court has already ruled, the defense needs to know the identity to conduct its constitutionally required investigation and preparations. *See Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999) ("A lawyer who fails adequately to investigate . . . renders deficient performance."). This investigation will entail letters rogatory and hiring investigators and attorneys in the third county to assist in the investigation.

As a practical matter, once that happens – and it will happen as soon as the government complies with the Court's discovery ruling – it will be almost impossible to keep the country a secret. The attorneys in the third country will almost certainly file court documents requesting information on the program's operation within that country. And eventually, one way or another, the information will become public.

But even if the information could somehow remain a secret during the investigation, the government would be forced to disclose it openly during the trial. As such, the government's continued concealment efforts are all much ado about nothing.

**C.   Conclusion.**

For these reasons, the defendants respectfully request the Court sustain their objection to the government's proposed protective order. As stated, however, the defense is not unsympathetic to the government's need to protect

identifiable individuals from potential harm. But the protective order already in place is sufficient to do so. After all, that is why the government insisted the defense agree to that order at the outset of this case.[3]

Dated: September 8, 2023            Respectfully submitted,
                                    *Devin Burstein*
                                    *Victor Sherman*
                                    *Patrick Griffin*
                                    *John Ellis*

---

[3] The defense requests a hearing if the Court is not inclined to sustain this objection on the papers.